v. Fluffy The next case is Christopher Bauckham Jr. v. Commissioner Janola Jackson and others. William Bergstrom is here for the appellants. Justin Golart is here for Appley Wright. Jason Waymire is here for Appley's Jackson, Martin, and Spires. And Mr. Bergstrom, you may begin. Thank you, Your Honor. I'm here to support Will Bergstrom on behalf of the plaintiffs in this case. To lawfully carry a handgun in Georgia, a person has to be a lawful weapons carrier. And an individual can be a lawful weapons carrier if they are eligible for a carry license. Now our plaintiffs in this case are not eligible for carry licenses because they are between the ages of 18 and 20 and have never served in the military and are not currently serving in the military. A person could also be a lawful weapons carrier, however, if they have a carry license. And our plaintiffs could be granted carry licenses under an injunction running against the defendants in this case. To be clear, the plaintiffs are statutorily ineligible for a license, and every official in the state of Georgia with any role in enforcing this law against them is a defendant in this case. Our plaintiffs are still under the age of 21. Thank you, Your Honor. So we still have one individual plaintiff who is 20 years old. Christopher Baucom is 20, and he will remain under 21 until March of next year. So March of 2024? Yes, Your Honor. In addition to that, we of course have Firearms Policy Coalition and Organization is a member in this, or a plaintiff in this case. And they have brought this case on behalf of their So that includes the named plaintiffs, but it includes their other 18 to 20-year-old members who would carry if they were able to. I didn't see much in the way of allegations about the members of the coalition. Could you tell me what would show a lack of mootness with regard to the organization? Yes, Your Honor. So we do allege that in paragraph 21 of our complaint, this is on Appendix 13, we do allege that Firearms Policy Coalition brings this action on behalf of its 18 to 20-year-old members in Georgia who are adversely affected. That includes the individual plaintiffs, but it's not agreed. It didn't identify any members, right? It did not identify others, but Your Honor, we know we have other members who are adversely affected who we have identified, and we will be sure to disclose them before this case becomes moot, so there's never any concern that this court has been divested of jurisdiction by mootness. Can I ask you a question? I'll say I think you've got a stronger case against the probate judges than against the Commissioner. Just correct me if I'm wrong. Your theory against the Commissioner is that he's responsible because he designs the forms that the probate judges use in deciding whether to grant the licenses. Is that right? That's correct. Okay. So on what basis then would an injunction running against him make a difference? Well, Your Honor, I think the best case for us on this is the Texas Democratic Party versus Abbott Fifth Circuit decision, and in that case, the Fifth Circuit held that they were standing against the Secretary of State of Texas because if plaintiffs succeeded, the forms that were used for applying for absentee ballots would have to be changed, and the same is true here. But Your Honor, I recognize, I think as you suggested, that even if, I mean, let's just hypothetically say that the probate judges won in this case and you just won an injunction against the Commissioner to design a different form, the probate judges would still be under a state law obligation to deny licenses even if they had to use a different form, right? That's correct, Your Honor. Okay. And we of course included, for completeness, we included every official with any role under the statute. The two officials are the probate judges and the Commissioner, but I agree with you that the really key officials in this case are the probate judges who actually make the decision. And as to the Commissioner, you're relying on a Fifth Circuit case, but we have our own precedent here in the Eleventh Circuit. This case is more like Jacobson versus the Florida Secretary of State, isn't it? Well, Your Honor, I do not think that Jacobson is on point with this case, and the reason there is that in Jacobson, the Secretary of State of Florida was the chief election officer, but he had no specific role with respect to the issue in that case, the ordering of candidates on the ballot. Here, the Commissioner has a specific role. That's why we included him. It's why I don't think Jacobson controls, but again, I think that the really crucial fact here is that the probate judges are the ones who decide whether or not a license is granted, and certainly any injunction would have to run against them. So as to the probate judges, plaintiffs haven't applied for a carry permit, right? Why isn't that fatal to standing? Because, Your Honor, they don't need to undertake a futile act in order to either create a ripe controversy or perfect standing. In this case, the district court discussed both, and I think this is one of those pure questions of law, facial challenges where the questions merge. By applying for a license, the plaintiffs would have wasted their time and wasted 30 of their dollars, but they would not have added any concreteness to this dispute before the court. Right, because the probate judges don't have discretion to grant licenses if the statute says they can't grant the license, right? That's correct. So, I mean, they are bound by the statute, and they admit in the brief that they are bound by the statute to apply the statute. So, if we had undertaken that step, it would be no clearer to this court what the stakes of this case are. The stakes are that we have 18 to 20-year-olds, adult Americans who have, we believe, a Second Amendment right to carry a gun in public, and Georgia denies them any way to carry a firearm in public. So, I do not think that by failing to apply, plaintiffs have deprived themselves of standing. What's the remedy that you would seek against the probate judges? Would it be an order requiring them to grant the licenses? No, Your Honor. We would seek an order requiring them to review an application from our plaintiffs as though the ban on 18 to 20-year-olds getting a license was not there. So, we would seek the application for all the criteria except for that one. Right. So, the probate judges would still have to decide whether the plaintiffs met the other statutory criteria, such as good moral character, those kinds of things. Correct, Your Honor. The criteria listed in the statute are also listed on the application in the form of essentially like a checkbox. So, doesn't that mean that the plaintiffs could fail in getting licenses regardless of whether the statute was in effect or not? I mean, theoretically, it's possible. At this point, Your Honor, we've alleged in our complaint that the only thing that is keeping them from acquiring a license is their age. We've alleged that they meet all the other criteria, and we've submitted declarations to that effect. The record below on summary judgment, we put in those declarations and put in our statement of material facts that they met the criteria, and the commissioner in response conceded for purposes of summary judgment they did meet the other criteria. So, yes, Your Honor, it's a theoretical possibility, but the record in this case shows that they meet the other subjective at all? No, Your Honor. There's no subjectivity in their determination. They're bound by the factors laid out in the statute. What if they're standing to sue the probate judges? If they're standing, shouldn't we wait until the outcome of our opinion in NRA versus Swearington to reach the merits of the case? Thank you, Your Honor. So that is something. In our brief, of course, we asked this panel to reach the merits of this dispute. When we did that, Bondi had not been decided and now taken in bank, held pending Rahimi. We would still, of course, encourage the panel to reach the merits. If the panel was disinclined to do that, I think it would be a good result. At least the probate judges, we have standing against them to hold this case because, as Your Honor just suggested, I think it's very likely that the result in Bondi, at the very least, controls significant parts of this case and it's very possible that it will control this case entirely. The normal course, though, is we don't address issues that district courts didn't address. In the normal course, we just say, assuming you win on this issue, that yes, you have standing, this lawsuit can go forward to reach the merits, and then let the district court be the first one to figure out how to apply whatever en banc decision we came up with in Bondi. Yes, Your Honor, that is the normal course. We explain in our brief why this is not necessarily the normal case. It involves a pure question of law, fundamental rights of the plaintiffs. I think it's particularly important in this case. You say it involves a pure question of law now, but we don't know how Rahimi is going to come out, and we don't know how Bondi is going to come out. So, I mean, what if Justice Gorsuch writes in Rahimi that you have to have three expert historians to determine whether something was right at the founding? I think it's safe to judge at this point that it is a pure question of law at this point. And even, I mean, to the extent that expert historians or historical work is necessary, Bruin makes clear that that is part of the legal inquiry. So I think it would... It's theoretically possible something could happen that would make this case fact-dependent. I think that is extremely... Let's just hypothetically say that we could get a decision to you before this case became moot on the standing grounds, but there's no way we could reach the merits before March of next year. Would you rather have this go back to the district court, or would you rather have us hold it and then potentially create mootness issues? Well, Your Honor, I think I would prefer that you hold it, and the reason for that is because I don't think mootness issues will arise. We will disclose additional individuals standing prior to any concerns with mootness. And I think that, you know, in seeking... Here's the potential mootness issue that I see, which we didn't ask you to brief. So you've sued three probate judges and one statewide elected official. Let's assume that we say that you don't have standing to sue the statewide elected official, but you do have standing to sue the individual probate judges. It seems to me that you would have to show not just that your organization has people throughout the state of Georgia that might be covered by this, but that you have people in these counties that would go to these probate judges that would have to be covered by this. What do you say about that? I think I agree with Your Honor that that is what we would have to show. I mean, I think the alternative would be that we would potentially seek to add a defendant. All of that just seems like way better to do in the district court than to try to do up here. In the alternative, Your Honor, I would say that this case, to the extent that it involves our ability to have a member at all times in the specific counties that we've sued, then this case presents a capable of repetition yet evading review issue under the Munis Doctrine because Firearms Policy Coalition, of course, the individuals, it's not capable of repetition as to them. For better or for worse, you're only 18 once. But for the organization, while they have thousands of members in Georgia, and I think it's quite likely that at any given time they have 18 to 20-year-old members who are adversely affected by this law somewhere in the state, you're right. It's possible there will be a period where they don't have a member in the particular county and in that context, I think they fit squarely into the capable of repetition yet evading review. But why wouldn't they look to whether the individual members or their issue was capable of repetition rather than the organization through a series of members? It's a good question, Your Honor. I think the issue is that the same complaining party has to present the same issue. And Firearms Policy Coalition would be the same complaining party, and its issue would be it has a member in the state of Georgia who is being denied the right to carry a firearm in public. And I'm happy to discuss this more, but I see my time is out and I don't want to render a vote. Thank you. All right. Mr. Golart. Good morning, Your Honors. May it please the Court. My name is Justin Golart. I'll be presenting argument on behalf of the Commissioner. Mr. Waymeyer will be presenting argument on behalf of the probate judges. If Your Honors don't have further questions with regard to redressability, I'd like to start by talking about the traceability issue that also affects the Commissioner. As Your Honors noted, the Commissioner's only role here is to provide the forms by which an applicant would apply for a license. There's a briefing by the appellant that suggests that the form and the fact that it has a place that says, you know, if you're under 21, attach this proof of basic training or honorable discharge, that that makes it so that they cannot apply for a license. That clearly is not true. They could apply for the license. They wouldn't have the appropriate form to attach to the application. And in all its application, the probate judge would deny the application because they're ineligible under Georgia law, not because of any deficiency with the application form. You know, the standard is it must be fairly traceable. And to be fairly traceable, it cannot be the act of an independent third party, which really what's happening here is the probate judges are granting and denying applications. It has nothing to do with a- Could the Court order the Commissioner to change the form? The Court could order the Commissioner to change the form, but that would have nothing, that would go back to the redressability piece. That wouldn't affect the probate judge's rationale or decision making in this, in the first place, whether the Court said to change the wording or to just get rid of this one parenthetical on a three-page application form. For also, you know, after the Constitutional Carry Act, for an optional license in the first place. Well, it's only an optional license, though, if you otherwise meet the statutory criteria, right? Yes, Your Honor. So, I mean, to them it's not optional. They've got to get the license. I think that's correct, Your Honor, in a certain extent. Some of the briefing kind of distinguishes between having a license and being eligible for a license. I do think they sort of merge in the idea that- Well, there's an or between it, right? I mean, lawful weapons carrier is defined as someone who either is licensed or eligible for a license. So, it's either way, and the only way they could do it is if they get the license, right? Yes, that's correct, Your Honor. Let me ask you a question about the commissioner. So, I just, I'm not super familiar with Georgia's government structure, but the commissioner is the head of the highway patrol, right, or like state traffic people, state police. So, is that more than like highway patrol? Is that like sort of a Georgia Bureau of Investigation division, something like that? No, Your Honor. The three main divisions under the commissioner are the Capitol Police, the Georgia State Patrol, and the Georgia Motor Carrier Compliance. Okay. Let me ask you a question. So, the prohibition in the current law that says that no person shall carry a weapon unless he is a lawful weapons carrier is a criminal prohibition. Is there any basis to say that the commissioner would be in charge of enforcing that criminal prohibition on people who are not lawful weapons carriers carrying a weapon? I think that there are a couple of answers to that, Your Honor. First of all, the scenario is a hypothetical. First of all, that one of the plaintiffs in this case would encounter a law enforcement officer from one of the divisions that we mentioned. Secondly, that that would go toward some sort of involvement with carrying a firearm would happen. But also, Georgia law states that a person cannot be detained solely for the purpose of investigating whether they are a lawful firearm carrier. So, this, I think, goes to what's in our brief, pages 21 and 22. There's a long footnote, note 6, that says that if, you know, this court has held that if a future injury is based on the occurrence of a random or unauthorized act, then the injury would be speculated for standing. Yeah. Can you play out that law a little bit? Because I was kind of confused as to what that meant. So, the law that says that you're not allowed to hold someone to investigate a violation of this firearm. Like, what does that mean in practice? I think the statute states that a person carrying a weapon shall not be subject to detention for the sole purpose of investigating whether such a person has a weapons carry license, whether such a person is exempt from having a weapons carry license, and then it goes on to reference previous parts of the statute. So, if I'm driving down the road and I get pulled over, what does that statute mean, I guess? I think that if you're pulled over for another reason, and it turns out that you also are, you know, carrying a firearm illegally, that that doesn't, that's not where this statute would apply. But you cannot be pulled over or stopped. So, if a police officer sees me with a firearm, they couldn't stop me and say, oh, gosh. And also, I think it's worth emphasizing also that this is an argument that is new on appeal. This is in the appellate briefs. This was not presented to the district court. And while jurisdictional issues obviously can be waived or cannot be waived by the defense, they can be not pursued by a plaintiff whose burden it is to establish jurisdiction in the first place. I want to talk briefly about Jacobson just because it's been briefed by both sides. Jacobson, for a couple of reasons, is very informative here. First of all, the form in Jacobson was an election ballot in Florida. And so, in Jacobson, the whole ballgame was what was written on the form. Whereas here, the parenthetical that is on the application form is tangential and preliminary to the ultimate issue of whether these appellants can carry a firearm in public. The other part of Jacobson that is different here, and, Your Honor, Judge Pryor, you disagreed with the majority in Jacobson, largely in part because you thought there was more of a connection between the Florida Secretary of State and these county election officials who would have control over the form. Here, there's no dispute about the commissioner's very limited role as far as creating the form, but having no enforcement over it, having no persuasion over the probate judges. And so, for all those reasons, Your Honor, if there are no further questions, I would give the rest of my time to Mr. Waymire and ask that you affirm the district court's judgment that the appellants lacked Article III standing to sue the commissioner. All right. Thank you. Mr. Waymire. Good morning. I'm Jason Waymire. I represent the probate court judges. May it please the court. Our position is that the court should affirm dismissal of this case. There is no rightness. There is no real controversy. And also, this case became moot because of a change in Georgia law. I have a case which I found yesterday. Unfortunately, I didn't put this in my brief, but I think it matters a lot. Did you file a 28-J letter on it? No. Okay. Then we don't know what it is, so you might want to file a 28-J letter after the argument to let us know what it is. I did pass it on to the counsel. It is Swann v. Secretary of State, 11th Circuit, 668 F. 3rd, 1285. And basically what happened in Swann was that a prisoner wanted a ballot, a voting ballot sent to the jail, and he sent an application like that. The Secretary of State said, we don't send ballots to jails. But Swann didn't put the jail as his address to send it anyway. So the court held that basically there was no standing, no right controversy, and the court wrote this. Swann's lawsuit is based on an imaginary set of facts. An imaginary request to send a ballot to the jail and an imaginary refusal on the ballot clerk's part to send a ballot to him. Swann asked the ballot clerk to mail Swann's absentee ballot to Swann's home. No other address was given. The clerk says the ballot was sent to Swann's home. Nothing wrongful can arise from those facts. So what year was Swann? Swann was 2012. Let me ask you a question. So I don't understand how they don't have standing to sue the probate judges given that the probate judges are the ones that decide whether to give them the license or not, right? This is like the standard lawsuit that we see every day where someone who is not eligible for something or is going to be denied something by a state official then sues that state official to get the thing that they want. So Swann addresses that. Swann says that the futility sort of idea doesn't apply because Swann is basing his case on an imaginary set of facts. Here, the plaintiffs are basing their case on an imaginary set of facts. What is the imaginary set of facts? Had I applied, then the judge would have done this. But the statute says the judge has to do it, though. The statute makes these people ineligible for a license. Correct. So we probably know what would happen. We definitely know what would happen, right? The probate judges aren't going to defy Georgia law. I agree with you. But that does not excuse the plaintiffs from creating a real, ripe case or controversy because without that, the court has no jurisdiction. I'm sorry. Go ahead. I was just going to say, let's assume that this law said that black people are not allowed to have concealed carry permits in Georgia. Would someone have to apply for the concealed carry permit, a black person would have to apply for the concealed carry permit, be denied the concealed carry permit before they could sue the probate judge to say that that law is unconstitutional? To create a real case or controversy, yes. Okay. Why would that be? I mean, just generally the law has an idea of you don't have to take futile steps that are pointless in order to create your claim. Why would we require that person to take a pointless, futile step? It's the Article III case and controversy requirement. So that's what it does. It requires futility. There's not some kind of, I don't know, practicality part of Article III that says if there's a real case. I mean, it seems like there's a real case in controversy, but maybe I'm wrong. According to Swan, no, there's no futility exception to this. The next paragraph in Swan says, Swan erroneously argues that we should apply a futility exception to the standing requirement and excuse his failure to request that his ballot be mailed to the jail. He contends that it's unequivocally clear that if he had indeed requested on his absentee ballot application that his ballot be mailed to him at the DeKalb County Jail, nothing different would have happened. There's still no case in controversy. No, and I remember Swan because it's an Alabama case, I think. Actually, I thought I litigated Swan. Maybe I litigated about Swan, but isn't the Swan issue, though, one where the court said it would not have been futile to go through the steps, not that even though it would be futile to go through the steps, you still have to go through the steps anyway? I argue Swan to say you can't base your case on an imaginary set of facts that couldn't have possibly happened because you didn't ask for it to happen. If the plaintiffs had applied for licenses, could the probate judges have denied them on other grounds? Of course, if there's other grounds. No, but I thought you stipulated that they meet the other grounds. I'm sorry? I thought you stipulated that they meet the other grounds. I haven't stipulated anything. Oh, well, that's what they said. What? I would say that they will last in their complaint and we're here on a motion to dismiss basis. So you probably have to, for the purposes of this case, assume that that's the case. But no, I don't stipulate that they are eligible in any sense. You haven't disputed, I guess, my point. There's no dispute at this point that they would be eligible. For the purposes of this case, at the procedural posture where we are, there's no way that I can. And you have to assume that the pleadings, that their allegations and their complaint are true. But I have no way of knowing whether they're true or not, and they haven't actually presented any kind of application. Can you address this language from the Supreme Court's decision in Carney, which I believe was cited, unlike the other case, where the Supreme Court said that a formal application, this is a quote, a formal application where that application would be merely a futile gesture, is not required for Article III? That statement, standing alone, seems to support the futility argument. I would just say that Swann says no. There's no futility sort of exception. You have to create a real case or controversy to have real jurisdiction in federal court. So if, let's say, an 18-year-old, how would this work conceptually, then, in order for an 18-year-old to have standing to challenge this Georgia law? They would just file an application and say in the application, I'm 18 years old, but I want the carry permit anyway? Yes. Okay. I mean, do you, is it, I mean, I haven't seen the form. Is it something that's filed under penalty of perjury? I mean, could you subject yourself, if you file an inaccurate application, could you subject yourself to some form of liability, whether it's civil or criminal? The answer to that is if you lie to the government on a form. Yeah. Yes. On the other hand, as I understand your hypothetical, you're saying he's telling the truth. He's 18. You've got to lie to the government on a form. Do you have to lie to the government on a form in order to have standing to challenge the Georgia law? No. What I anticipate or what I envision to make real standing in this case would be a client who is, let's call them 18 years old or 19, makes an application, says truthfully, I am 19 years old, and then the probate judge says, okay, you look eligible on every other basis, but you are 19, so denied. That's a good case of controversy. So you've got to engage in an exercise of futility in order to have standing. That's your position based on SWAN? Yes. Okay. And could a probate judge determine that, well, I'm a judge. I think the Second Amendment supersedes this Georgia law. A probate judge could find that. Now, how is that possible? Because the Georgia Supreme Court has said in a case that I thought one of you all would find, it was like two months ago, that the probate judges are only performing a ministerial function when they grant or deny these licenses. I mean, a probate judge, whatever kind of function you call it, has to abide by the Second Amendment. So if a probate judge concluded that the Second Amendment overrides Georgia law, then the probate judge would have to say, okay, I'm going to grant the request based on the Second Amendment because that trumps Georgia law. I will say also that if a probate judge makes a ruling that is in violation of the Second Amendment, that is appealable through the Georgia system. They can file for mandamus. They can appeal it. And so there is an avenue of review based on the Second Amendment that they can undertake. With respect to immunity, isn't that a fairly fact-specific inquiry based on what the judge actually did? In other words, whether it's administrative slash ministerial or whether it's a judicial function. It's a look back at what the judge did. Do you agree with that? If we're talking about judicial immunity, there is some factual level sometimes. But as I understand that immunity, it is so incredibly broad that practically everything you do as a judge is immunized. What if, let's just say hypothetically, the Georgia Supreme Court said in September, quote, processing weapons carry licenses does not involve the exercise of judicial power, end quote. Would that be a problem for your judicial immunity argument? It is a complication. However, these are still judges. Yeah, I have law clerks. But if I fire a law clerk, that's not a judicial function, right? It's not. Let's, I mean, probate judges. I've already conceded I'm not immune. So, I mean, probate judges, at least in Alabama, I assume this is the same way in Georgia, probate judges do a lot of stuff. They administer elections. They do forms like this. They do lots of things that are not judicial functions. Is that the same way it is in Georgia? There are a handful of functions like issuing marriages licenses. Do they also maintain property records and things of that nature? They don't maintain property records. Okay. So they do marriages. They do licenses. It seems like they do lots of licenses. It seems like over a hundred and so years, there's a dustbin of things that have been assigned to probate court judges that are not like traditional adjudication of cases that come before them. Do probate judges in Georgia have to be lawyers? In some counties with a certain population, they do. Right, but in other counties, they don't have to be lawyers. Correct. Okay. I'm way over my time. All right. Thank you, Mr. Wehmeyer. Okay. Thank you. Mr. Bergstrom, you've reserved some time for rebuttal. Thank you, Your Honor. I'll try and move through my points quickly here. Sort of starting where the last argument ended, the probate judge in granting or denying these licenses is undertaking a ministerial function, possibly an executive function, just not a judicial function, so there's no question of immunity. The form… Have you read the Swan case? We haven't read it yet. Certainly, Your Honor. I'd love to address it. Yes. Swan was a case in which a prisoner applied for a mail-in ballot for an election, and when he applied for the mail-in ballot, he did not put his address of residence on the form. He filled out the form incorrectly. There was a policy that they would not send the forms to the jail where the prisoner actually lived. Other prisoners put their proper… asked for it to be sent to the jail and were denied. Swan himself was not denied because his application was simply incorrect. So what I read Swan to stand for is the principle that the futility exception is something that applies in a pre-enforcement challenge. It is not something that can apply in a case where you actually undertook steps and were unable to get the license or the ballot or whatever you were seeking for another reason because in that context, the futility exception runs into the idea that we do not litigate constitutional issues when there's some other adequate cause. That's how I read Swan, and I think it's distinguishable on that basis. As Your Honors have suggested, there is a futility exception in pre-enforcement cases. And on that front, I'd like to just briefly address… Judge Pryor asked questions about whether or not there were other reasons these plaintiffs could be denied. I think first, since we're on a motion to dismiss, we've alleged that there are no other reasons, so I think that that allegation has to be taken as true. And it was the state's opposition to summary judgment in which they conceded these points. I want to be clear about that. Furthermore, I'd point the court. We discussed these cases in our reply brief, but in Bach v. Cattani, the court held that it was futile for an individual who lived in Virginia to apply for a New York carry license. And so he didn't have to. He had standing to challenge the restriction on New York carry license that didn't let people who didn't live in New York get a license. That was despite the fact that getting a license in New York was, before the Supreme Court decided Bruin, highly discretionary. There were a lot of reasons that person may not have wound up getting a license. But since there was one clear reason that he wasn't applying, that was the reason that gave the court jurisdiction to decide that dispute. Last of all, on the claim that we have standing against the commissioner on this separate basis that he is the head of the Georgia State Police, the reason we didn't address that below was because when we filed our case below and when we argued this case below, at the time, there was no constitutional carry law in Georgia. And so you needed a license regardless. Pursuing that avenue of standing against the commissioner would have been us asking to put 18 to 20-year-olds in a better position than other Georgians with respect to carry. We didn't want to do that. Now that other Georgians can carry without a license, we think that is a valid reason to find standing against the commissioner. If there are no further questions, I thank the panel for their time. All right. Thank you. Thank you, counsel. And the court will be in recess for 15 minutes. All rise.